Reed, J.
In March, 1891, plaintiff was indicted and convicted in the district court of Las Animas county for the crime of rape, alleged to have been perpetrated upon the *233 person of one Lupa Frata Consaluz. A motion for a new trial was made and overruled, and a sentence of three (3) years imprisonment imposed.
In this case the conviction rests upon the testimony of the prosecuting witness, slightly corroborated, in one particular only, by the evidence of another Mexican woman, one Lucia Barela, the prosecutrix, as is frequently the case from the character of the offense, being the only one who testified to its perpetration.
•In speaking of the charge of rape, Lord Hale said: “ An accusation easily made and hard to be proved, and harder to be defended by the party accused though never so innocent.” 1 Hale P. C. 635.
Conviction of the offense is seldom or never allowed upon the unsupported evidence of the prosecutrix. She iá'hllowed to, and is generally the only witness who can testify directly to the principal fact,—the perpetration of the offense, but to warrant conviction the evidence of the main fact must be corroborated by other evidence of circumstances and facts sustaining the principal charge.
The injured party is legally competent as a witness, “ but her credibility must depend upon the- circumstances of the case which concur with her testimony ; whether she is a person of good fame ; whether she made complaint of the injury as soon as was practicable; or without any inconsistent delay ; whether her person or garments bore token of the injury done her; whether the place was remote from passengers or-secure from interruption, and whether the offender fled"'or the like. On the other hand, if she be of ill fame, and stands unsupported by other evidence; or if she concealed the injury for any considerable time after she had opportunity to complain ; or if the act was done in a place where other persons might have heard her cries, but she uttered none, *' * * * these circumstances, and the like, will proportionately diminish the credit to be given to her testimony.” 3 Greenleaf’s Ev., sec. 212 ; 2 Whart. Crim. Law, sec. 1149.
' “ In prosecutions for this offense, when the prosecutrix is *234 a witness, it is matérial to show that she made complaint of the injury while it was yet recent. Proof of such complaint is original evidence.” Whart. Crim. Ev., sec. 273.
The complaining witness testified that as she was passing along the trail, the defendant caught her. She immediately hallooed three times in quick succession, as rapidly as she could. At the third call the woman Barela arrived, having heard the calls. So far, and only so far, is she corroborated by the witness Barela. The testimony of the prosecutrix was, that up to the time of the third call they were standing, he holding and retaining her by force. At the third call he threw her upon her back upon the ground, placed himself upon the top of her person and proceeded to accomplish his purpose; that while holding her by the wrists he drew a knife from his pocket and threatened her life. She continued to resist him by every possible means until exhausted, when he succeeded in accomplishing the crime. The struggle was fierce and long continued, her clothes rent and torn, her lower limbs bruised and blackened to her knees, her wrists lacerated and bleeding. She said: “ The left wrist, where he took hold of it, he squeezed it so hard that blood flew from my wrist. The other one was black and blue.”
Both she and Barela concur in saying that at the third call Barela arrived. So it is clear that at that time the crime had not been consummated, nor had the struggle testified to by the prosecutrix commenced, nor had the knife been pro-' duced or the threats made. She further stated that on the arrival of Barela they were lying side by side on the ground; afterwards said she was lying across his lap, and that he was holding her by the wrists to prevent her getting away. The woman Barela testified, that on her arrival he was sitting on the ground and she lying across his knees, he doing nothing to detain her. “ He didn’t have hold of her; she was just lying across his legs; ” that she made no effort to move or get away; made no complaint whatever; said nothing at all; required no assistance. The conclusion is irresistible, —either that the story of the hallooing was a pure fabrica *235 tiou, or that the alleged victim of forcible lust had changed her mind.
The object of hallooing is legally supposed to be to obtain assistance, and prevent the perpetration of the foul crime. When the assistance arrives in time, it is also presumed the assaulted will avail herself of it and make some effort to escape. No such effort was made, as far as shown by the testimony. She was apparently enjoying the situation and had no wish to be disturbed. The woman Barela, properly understanding the situation, at a hint from the defendant, complacently withdrew, probably concluding that the aid of a third party was not needed. As- before stated, according to the testimony of both, this was before the fierce, forcible struggle, and the consummation of the alleged crime. At that time, when, if ever, a party would be supposed to cry for help, no outcry at all was made. The prosecutrix testifies to none, and the woman Barela, whose cabin was only a few yards away, says there was none. In all other particulars the woman Barela not only fails to corroborate the complaint, but contradicts her. •
On direct examination, prosecutrix testified: “ Q. Where did you go after he had accomplished his purpose ? A. I went with her (Barela) to her house. Q. Who did you first see after this transaction ? A. Lucia Barela ? ”
On cross-examination she denied having so stated, and said she did not see her again that day. She afterwards testified that she went directly to her own house. Lucia Barela testified that it was twenty days, more or less, after the occurrence before she again saw her, and that she said nothing at all to her in regard to the matter.
• Complainant further testified that -the first person she saw after the occurrence was a neighbor Mexican woman, Romaldo Archuleta; that she met her at the washing place on the creek, and they together went to complainant’s house. “ As soon as we went in the house I told her.” Again: “Just as soon as we arrived at the house I told her what had happened. Q. And then you told her all about it? *236 A. Yes, sir. Q. Did you show her the bruises? A. No sir, I did not. I just told her this man had taken me. Q. Showed her your torn clothes, did you? A. No, sir, I did not.”
The witness Archuleta testified she first saw complainant at her (complainant’s) house at three' o’clock in the afternoon, and that complainant, neither at that time, nor at any other, had ever said anything whatever in regard to the alleged occurrence.
It seems incredible that a virtuous woman, recently outraged and made the victim of one of the most revolting, unnatural and brutal crimes, where the assault was so forceful, violent and long continued, and the resistance so extreme and persistent as to result in the severe bruising and lacerating of the limbs and the rending of the garments, and sheer exhaustion, should not call the attention of a female friend to the injuries sustained as evidence of the struggle and of the perpetration of the offense. Yet she admits she did not show them, and made no statement of them to the woman Archuleta. She says she did show her injured wrists to an Italian named Gaetano, but he had left the country previous to the trial.
The law does not contemplate, and seldom allows a conviction to stand upon the unsupported testimony of the prosecutrix. It requires corroborative evidence in support of the principal fact. The crime must be reported at the earliest practicable opportunity, and the marks of personal violence and torn clothing must be shown. Such corroboation must come from persons to whom the disclosures were made.
In this case there is no corroborative evidence of any importance whatever. That adduced for the purpose is more contradictory than corroborative. The testimony of the prosecuting witness is so contradictory and contradicted, so at variance with reason and human experience, as to render it worthless.
Leaving entirely out of consideration the testimony of the *237 defendant and other witnesses for the defense, and resting the decision entirely upon the case made by the prosecution, we think the conviction unwarranted, and that it should not be allowed to stand. To affirm a conviction on such evidence would be to establish a dangerous precedent, and place any innocent man at the mercy of any designing, unprincipled woman.
We do not wish to be understood as declaring that no conviction for the crime of rape can be sustained where it rests upon the evidence of the prosecutrix alone, and uncorrobo rated, but that such cases should be rare indeed. No general rule can be laid down. Each case must depend upon its own merits and surrounding circumstances, and, to a great extent, upon the character of the prosecuting witness.
Our attention is called to several supposed errors in the reception and rejection of evidence, and in giving and refusing instructions, which we do not find it necessary to review, preferring to rest the decision solely upon the want of evidence to warrant a conviction. The court erred in refusing to set aside the verdict and grant a new trial.
The judgment of the district court will he reversed, and a new trial is directed.

Reversed.